305 So.2d 299 (1974)
MANATEE COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
HARBOR VENTURES, INC., a New York Corporation, et al., Appellees.
No. 73-1011.
District Court of Appeal of Florida, Second District.
December 4, 1974.
As Modified on Denial of Rehearing January 15, 1975.
Paul E. Logan, of Goodrich & Hampton, Bradenton, for appellant.
Robert Orseck and Edward L. Sternlieb, of Podhurst, Orseck & Parks, Miami, and Dye, Dye, Cleary & Scott, Bradenton, for appellees.
GRIMES, Judge.
This is an appeal from an order awarding appellees' attorney a fee of $69,840 for services in a condemnation proceeding.
The County filed a petition to condemn a tract of property for the construction of sanitary sewage treatment facilities. When the petition was filed, the County submitted an estimate of the value of the parcel sought to be taken in the amount of $1,119,000. Dewey A. Dye, Jr., Esq., filed an answer on behalf of the several named defendants who owned an interest in the *300 property in which he asserted that they would not only lose the value of the land which was being condemned but that as owners of adjoining contiguous land not being taken, they would suffer severance damages by reason of the use to which the condemning authority planned to use the land being taken. Following negotiations, the parties entered into a stipulation for the entry of the final judgment in which the agreed value of the property was set at $1,400,000. Pursuant to the stipulation, the County was to "pay all reasonable attorneys' fees incurred by the defendants in this cause, the amount of said fees to be set by the court."
At the hearing for the setting of the fee, Mr. Dye presented a narrative account of his services which included the following:
1. Preliminary meetings and discussions with representatives of the County prior to the filing of the suit.
2. Discussions with the defendants' real estate appraiser.
3. Legal research into the availability for severance damages arising from the peculiar nature of the taking.
4. Consolidation of the defenses of the several defendants and obtaining disclaimers from a number of them.
5. Several hearings before the court on matters such as the order of taking, a petition to intervene and the withdrawal of funds.
6. A number of conferences with opposing counsel concerning settlement.
The several defendants were long standing clients of Mr. Dye's office. Mr. Dye testified that he and other members of his firm spent approximately 135 hours in the cause. An attorney experienced in condemnation matters gave an opinion that a reasonable attorney's fee for Mr. Dye in this case was $79,000. He arrived at this figure by adding (a) 2 1/2% of the County's $1,119,000 estimate, (b) 15% of the first $100,000 obtained over the estimate, and (c) 20% of the remaining $181,000 obtained over the estimate. There was no other expert testimony presented. In setting the fee the court employed a somewhat different percentage formula.
The County asserts the fee to be excessive. Appellees contend that the setting of this fee did not constitute an abuse of discretion, particularly in view of the fact that the only expert witness testified to a higher fee.
While the opinion of an expert witness testifying on attorneys' fees is persuasive, it is not binding upon the court in its determination of a reasonable fee. Evors v. Bryan, 1919, 77 Fla. 399, 81 So. 513; Behm v. Division of Admin., State, Dept. of Transp., Fla.App.4th, 1974, 292 So.2d 437; Breitbart v. State Road Department of Florida, Fla.App.3rd, 1959, 116 So.2d 458; Fekany v. State Road Department, Fla.App.2d, 1959, 115 So.2d 418. Therefore, it is still pertinent to consider whether the amount of this fee may be considered reasonable.
Numerous cases have discussed the criteria relevant to the setting of a reasonable fee. E.g., Provus v. Provus, Fla. 1950, 44 So.2d 656; Canal Authority v. Ocala Manufacturing Ice & P. Co., Fla.App.1st, 1971, 253 So.2d 495. Canon 2 [DR 2-106(B)] of the Code of Professional Responsibility specifically sets forth the factors to be considered as guides in determining the reasonableness of a fee.[1]
*301 The rigid adherence to the setting of fees by using a percentage of the amount involved has the effect of ignoring most of the factors enumerated in DR 2-106(B). From the standpoint of a public authority, the practice is helpful in budgetary planning and may be useful to avoid being criticized for the payment of fees on preferential basis. Yet, when the amount involved is so much greater than the customary transaction, the application of percentages, even on a sliding scale, runs the risk of setting a fee which is disproportionately higher than the extra responsibility placed upon the attorney by reason of the magnitude of the matter. Pursuing the theory advanced by the expert witness to its ultimate extreme, if the condemnors' original estimate of value had been $20,000,000, the defendants' attorney could have received a $500,000 fee even if he were totally unsuccessful in obtaining any more for his client than what had been offered in the first place. The fact that the fee is to be paid from a public fund does not warrant a higher fee than what the defendants would ordinarily be expected to pay if the law did not place this responsibility upon the condemning authority.
We are mindful of the necessity that a lawyer be well paid for his services. It is very much in the public interest that lawyers be fairly compensated in order to maintain the independence and integrity of the Bar. However, even where a client receives huge benefits which are directly attributable to the skill of his lawyer, there must be a limit to the amount the lawyer should be entitled to receive for these services.[2] This is one of the standards which sets the law profession apart from other ways of earning a living.
While the time a lawyer spends on a given case is only one factor to be considered in setting his fee, it must be given considerable weight because as has often been said in justifying the size of attorneys' fees, "a lawyer's time is his stock in trade." The fee which was set below results in compensation of more than $517 per hour. Moreover, the fee was never in jeopardy because there was no contingency involved, the acceptance of the employment did not entail the risk of losing future business and the fee was not one agreed upon in advance between attorney and client for the accomplishment of a given result.
No one doubts Mr. Dye's reputation in the practice of law. He lived up to this reputation in the skillful job he did for his clients. He is entitled to a good fee for his services. Yet, considering all of the circumstances, we believe that the fee awarded below was excessive to the extent of being beyond the bounds of reasonable discretion. See Utica Mutual Insurance Company v. Clonts, Fla.App.2d, 1971, 248 So.2d 511. Therefore, the order is reversed, and the case is hereby remanded so as to permit the trial judge to set a fee consistent with the guidelines set forth in this opinion.
McNULTY, C.J., and BOARDMAN and GRIMES, JJ., concur.
NOTES
[1] "DR 2-106. Fees for Legal Services

* * * * *
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent.
* * * * *"
[2] Canon 2 [DR 2-106(A)].