311 So.2d 699 (1975)
DADE COUNTY, a Political Subdivision of the State of Florida, Appellant,
v.
OOLITE ROCK COMPANY, a Partnership, and Dr. John T. MacDonald Foundation, a Florida Corporation, Appellees.
No. 74-1042.
District Court of Appeal of Florida, Third District.
April 1, 1975.
Rehearing Denied May 13, 1975.
*700 Stuart Simon, County Atty., and Joseph Komansky and Robert A. Ginsburg, Asst. County Attys., for appellant.
Hall & Hedrick, Mershon, Sawyer, Johnston, Dunwody & Cole and George W. Wright, Jr., Miami, for appellees.
Before PEARSON and HENDRY, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
*701 PER CURIAM.
This is an appeal by Dade County from an order awarding fees for the services of the attorneys for two of the landowner defendants in an action in eminent domain which was voluntarily dismissed prior to trial on the issue of necessity for the taking, which had been raised by defensive pleadings. The appellant contends the fees allowed were excessive. We find merit therein.
By its petition the county sought by eminent domain to acquire five described parcels of real estate, for park purposes. Two of the parcels, I and IA, owned by the defendant Oolite Rock Company, comprised 41.8 acres, of which 22.8 acres were lake bottom. Parcel II, comprising 50.5 acres, of which 30.5 acres were of the lake bottom, was owned by the defendant Dr. John T. MacDonald Foundation.[1]
The petition was amended in respect to the properties involved. The landowners answered the original and the amended petition, claiming insufficiency of the petition and challenging the necessity to take.[2] The court set a certain afternoon for the hearing of such matters, and gave notice thereof. However, no such hearing was held. Two days before the hearing the county informed defendants' counsel it was going to dismiss, and on the day before the date set for the hearing the county voluntarily dismissed the action, by serving a written notice of dismissal as authorized by Rule 1.420(a)(1) FRCP. The reason for dismissal, whatever it may have been, was not shown in the notice of dismissal, nor was it required to be, and it did not otherwise appear in the record.[3] Due to dismissal of the action prior to a hearing on the issue of the necessity to take, there was no ruling on the merits thereof. In the circumstances of the case, the voluntary dismissal by the county was without prejudice to it to file a similar action thereafter, if it should so choose; and if such a new action should be filed, a challenge of the right to take if raised therein by a defendant landowner would be required to be determined in a hearing on the merits in that subsequent action.
Upon the voluntary dismissal of the eminent domain action by the county prior to trial, the county became obligated to pay the costs and reasonable fees for the services performed by the defendant landowners' attorneys in the action up to the time of its dismissal.[4]
*702 After the dismissal of the action, the said defendants filed motions for judgment for costs and attorneys fees. The amounts of the costs due to the respective defendants were determined by stipulation. After a hearing the court allowed the costs, and the attorneys' fees which are the subject of this appeal. To the attorneys representing Oolite, the court awarded a fee of $60,000, and to the attorneys who represented the MacDonald Foundation, the fee awarded was $51,700.
In opposing the county's argument that the fees allowed were excessive, the appellees contend the allowances were reasonable and did not represent an abuse of discretion, in view of the fact that they were in amounts recommended by their expert witnesses. [The witness presented by the county recommended quantum meruit fees amounting to $200 per hour, which would have been one-fifth of that allowed by the court].
It is settled, beyond the need to cite the numerous decisions so holding, that while the opinion of an expert witness testifying on attorneys' fees is persuasive, it is not binding upon the court in determination of a reasonable fee. Therefore, whether these fee allowances were reasonable, or were excessive as contended by appellant, is to be determined upon consideration of the factors which are applicable in fixing the fees, and to the relevance and degree of weight which such factors should carry in the circumstances of this case. Those factors have been listed by the courts on a number of occasions.[5] Such factors, as set out in Canon 2 of the Code of Professional Responsibility [DR 2-106(B)], are as follows:
"Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent."
The problem with which the trial court was presented was to determine reasonable fees for the services of the attorneys in the action, on a quantum meruit basis.[6] They should be the equal of the fees which it reasonably could be expected would properly be charged by the lawyers, and paid by their (defendant) clients, if by law the latter, rather than the condemnor, were required to pay the same.[7] In the *703 fixing of such fees it is important to the members of the Bar, and to the lawyers involved, that the latter should be fully and adequately compensated for their services, and equally important to the party who is to be ordered to pay the fees, and to the public where the fees are to be paid from public funds, as well as to establish and retain public confidence in the judicial process,[8] that such fees allowed by the court should not be excessive.
In that regard duties are imposed on lawyers seeking fees and upon the court which awards them. In the Code of Professional Responsibility, Canon 2, DR 2-106(A) it is provided: "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee". In sub-paragraph (B) thereof it is stated: "A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee". In the Code of Judicial Conduct, Canon 3, subd. B(4), it is provided that a judge "should not approve compensation of appointees beyond the fair value of services rendered". While the Canon does not expressly relate to awards made by a court which are for attorney's fees, rather than to appointees of the court, that provision of the Code of Judicial Conduct would appear to be applicable by analogy in cases such as this. See Manatee County v. Harbor Ventures, Inc., Fla.App. 1975, 305 So.2d 299.
In this case, on the hearing on the motions for fees, a lawyer of the firm which represented MacDonald Foundation and a lawyer of the firm which represented Oolite testified, outlining the services performed prior to dismissal of the action, consisting in general of conferences, filing defensive pleadings averring absence of public necessity for the taking for park purposes, investigation of facts relating to the issue of the right to take, and, in concert, taking lengthy discovery depositions of three employees of the county's Parks Department with reference to factual matters relevant to the question of the reasonable necessity to take the property for park purposes. The time stated to have been expended therein by the attorneys for the MacDonald Foundation was 52 hours (including the time involved in the fee application hearing). The time stated by an attorney for Oolite as having been thus expended by him and his two partners was 109 hours. However, it was brought out that 30 hours of that time was expended in connection with the fee application of said attorneys, and that 13 of the 109 hours were expended by said attorneys in proceedings before administrative boards (prior to and during the pendency of this action) in an effort to have the zoning on the Oolite property liberalized. With reference to those 43 hours we are impelled to agree with the position of the county that it is not obligated to pay therefor. Excluding them, the time expended by the attorneys for Oolite was 66 hours. Under the law, Oolite was relieved of any obligation to pay the reasonable compensation to its attorneys for such services in that the court would award the same and require it to be paid by the county, and the services of Oolite's attorneys in attempting to have the property rezoned to increase its value were separate from and not performed in this action. In testifying as to the services performed, the attorneys for said defendants did not suggest a fee amount, each stating there had been conferences *704 with attorneys who would testify and express opinion thereon.
One such witness presented by the fee claimants recommended allowance of a fee of $60,000 to the attorneys for Oolite and $55,000 to attorneys for the MacDonald Foundation. That witness stated he placed "principal emphasis" on the work done, the complexity of the issue involved, the value of the property and the benefit to the client that resulted from the services performed, which it appears from his testimony he regarded as "accomplishing the purpose" of establishing absence of the right to take the property by condemnation (which was not done, due to the dismissal without prejudice by petitioner prior to any hearing on the merits of the issue).
A second witness for the fee claimants recommended allowance of a fee of $60,000 to the attorneys for Oolite and $51,700 to the attorneys for the MacDonald Foundation [being the amounts which the court allowed in its order]. The testimony of that witness discloses he considered that the services of the attorneys had resulted in benefit to the client such as would have been attained if the issue of taking had been tried and determined in favor of their clients, and also that because there was an indication the action might be refiled the attorneys should be compensated in this case for similar services which would be required to be performed in the subsequent action, with some credit to be allowed to the county when fees would be fixed in a subsequent action if one should be filed. That witness recommended the allowances of the fees in the amounts above stated on the basis of a percentage of value, stating "I figured at 5% of the gross value of the property".[9]
A witness presented by the county, upon commenting on the circumstance that there was no hearing on the merits on the issue as to the right to take, and noting that the attorneys should be compensated on a quantum meruit basis for the services performed, expressed the opinion that a reasonable allowance for the services of said defendants' attorneys would be an amount equal to $200 per hour for the time expended by them in the performance thereof. Based on 79 hours for the Oolite attorneys (omitting 30 hours they expended incident to their fee application) the fees suggested by the county's witness were $15,800 for the services of the attorneys for Oolite, and $10,400 for the 52 hours of services of the attorneys for MacDonald Foundation.[10]
*705 The fee awarded by the court, of $60,000 for Oolite's attorneys for their corrected time of 66 hours of services, amounted to $909 per hour, and the $51,700 attorneys' fee awarded to the attorneys for the MacDonald Foundation for their 52 hours of services amounted to $993 per hour. In the circumstances of this case we are of the view that the fees thus allowed were substantially beyond the bounds of reasonable discretion, and were clearly excessive.
Acknowledging the skill and eminence of the attorneys involved, and that the preparatory, but unconclusive work performed by them no doubt was well done, and that they should be well and adequately compensated therefor, it is apparent on this record that the witnesses for the claimants ignored or misapplied numerous of the relevant factors.[11] They failed to give regard to the absence of, or limited import to be given in this case to certain factors which when present enhance an allowance (such as intricacy or difficulty of legal problems (see footnote 2) and results favorable to the client obtained through trial or other disposition of a cause on its merits), and to the absence of any contingency or uncertainty as to the right to receive a reasonable fee, and by placing undue importance on the factor of value of the properties. While the latter factor is due consideration, in this case, where the properties were not taken, and the action was dismissed prior to any hearing, the weight to be accorded to the factor of value of the properties was slight and oblique, rather than material and direct, and it served only to indicate the degree of responsibility undertaken. Furthermore to recommend fees based on a percentage of the value of the properties was not proper in the circumstances of this case. See Manatee County v. Harbor Ventures, Inc., supra (305 So.2d at 301). Also it was inappropriate to base the fees in part on services which might be required to be performed by said attorneys in a subsequent action to take said properties, if one should be filed. For the reasons stated, the order awarding fees made by the court based on and in accordance with such testimony was erroneous.
Accordingly, the order appealed from is affirmed as to the allowances therein of *706 the costs to the defendants, and is reversed as to the allowances therein of attorney's fees, and the cause is remanded to permit the trial court to set quantum meruit attorney's fees for the said defendants that are realistic and reasonable in amount based on proper guidelines applicable to and as reflected by the circumstances of this case.
Affirmed in part and reversed in part, and remanded.
HENDRY, Judge (dissenting).
I must respectfully dissent from the majority opinion written in this case. The trial judge in this case was vested with broad discretion to award a reasonable attorneys' fee after considering the testimony of competent, qualified, and disinterested attorneys testifying as experts upon the matter of a reasonable fee.
Of course, it was the duty of the court below to consider all pertinent facts and circumstances which legally and equitably ought to affect the amount awarded as a reasonable fee to the end that the condemnors (Dade County) are not unduly or unreasonably penalized.
But, when the determination of the trial court reaches the District Court of Appeal it comes before us clothed with a presumption of correctness. See, e.g., Johnson v. Roberts, Fla. 1955, 79 So.2d 425; Cohen v. Mohawk, Inc., Fla. 1962, 137 So.2d 222; Weiss v. Stone, Fla.App. 1969, 220 So.2d 403; Benedict v. Dade County Realty, Inc., Fla.App. 1973, 274 So.2d 553.
Appellate judges are not seers, free to engage in the luxury of substituting our "better judgment" for that of the trial court sitting as the trier of fact. See, Colvin v. State of Florida Department of Transportation, Fla. 1975, 311 So.2d 353 (filed March 12, 1975).
Where there is substantial competent evidence in the record supporting the trial court's conclusions this court is obliged not to upset rulings entered by the court.
On numerous occasions, this court and other appellate courts in Florida have recognized that it is their duty to affirm an award of attorney's fees in eminent domain cases where the appellant has not presented a clear showing that the court which handled the proceedings at the trial level has committed an abuse of discretion. See, Florida East Coast Railway Co. v. Martin County, Fla. 1965, 171 So.2d 873; Dean v. State Road Department, Fla.App. 1966, 184 So.2d 517; City of Miami Beach v. Cummings, Fla.App. 1970, 239 So.2d 501; City of Miami Beach v. Manilow, Fla.App. 1971, 253 So.2d 910; City of Miami Beach v. Liflans Corporation, Fla.App. 1972, 259 So.2d 515; City of Miami v. Culbertson, Fla. App. 1973, 281 So.2d 578.
In City of Miami Beach v. Liflans Corporation, this court said:
"... The attorney fees allowed by the trial court were well within the range of the testimony, relating to reasonable fees for the attorneys' services, of an expert witness produced by the landowner and one produced by the city. While the court was not bound by such testimony, we cannot fault the court for following it... ."
In City of Miami Beach v. Cummings, supra, we stated the following:
"Appellant's point urging that the amounts awarded as attorney's fees were so large as to demonstrate an abuse of discretion by the trial judge must fail. The awards were proper because they were within the limits testified to by expert witnesses. (Citation omitted.)"
In the case sub judice the awards were within the limits testified to by the expert witnesses, therefore, I believe it is incorrect to fault the trial court for relying not only on the testimony of the appellees' two expert witnesses, but also on the single expert witness who testified on behalf of the county.
*707 Mr. John Fletcher, the county's expert, testified as follows:
"A. (By Mr. Fletcher) ... I think the Court should set a fee such as that testified to by Mr. (Leon) Black and Mr. (Toby Prince) Brigham (the appellees' expert witnesses) and provide that it shall be credited against any later award if the County refiles the case. You would then be approaching something of an equity in that contingency. That guarantees you receive compensation considered fair for the total victory and that would ensure that the County could refile the suit and not pay twice for the same case."
As I perceive Fletcher's testimony, he stated that the appellees would be entitled to an hourly fee only in the event that the county intended to refile the case. His point was that, in that event, he would not consider the appellees' efforts on behalf of their clients to be a "total victory."
Otherwise, Fletcher's testimony in no way implied that the attorneys' fees should be computed on an hourly basis.
In Baruch v. Giblen, 1935, 122 Fla. 59, 164 So. 831, cited in a footnote by the majority for the proposition that an attorney's fee should be computed on a quantum meruit basis, Mr. Justice Terrell wrote the following:
"The matter of fixing attorney's fees often involves the most delicate technique of the lawyer's art. The primary, though not the exclusive, elements that enter into the determination of such a fee are the amount and value of the services rendered, the responsibility undertaken, the importance and results of the litigation, and the time required in the conduct of it. In estimating the value of an attorney's services his skill, experience, professional reputation, and the amount of his business may be taken into consideration... ."
I disagree with the reasoning of the majority that such factors as the real property's value, the intricacy of the legal questions involved and the favorable results obtained on behalf of the clients (which by implication the majority says must be obtained through a trial "or other disposition of a cause on the merits") are of limited importance under the circumstances of the case at bar.
The fact that the case is dismissed on the day before a trial is scheduled does not render the factor concerning the value of the properties "slight and oblique."
It must be remembered that the county's own appraiser assessed the properties' value at over a million dollars. In addition, the appellees were pursuing their own independent appraisals of the land's value which reasonably could be expected to be higher than the county's; and they (the appellees) were vigorously defending against the county's claim of public necessity for taking their clients' property for park purposes.
In this light, I do not feel that the difficulty of the legal problems or the results obtained on behalf of the clients is a matter of slight importance.
As stated in the case of State v. Westover, 140 Cal. App. 447, 295 P.2d 96 (1956), "people hired lawyers to get results and when an excellent result was obtained the determination of fair compensation should be influenced thereby... ."
Dade County has chosen not to enlighten us concerning its reasons for taking the voluntary dismissal. It is simply stated that the reasons are irrelevant to our consideration of this case.
Maybe so. Nevertheless, assuming that the county has not lost this case and intends to refile a condemnation suit, the trial court has adequately protected the county's interests by allowing for a credit resulting from any attorneys' fees which might be incurred in the event that the county refiles its petition in eminent domain.
*708 However, I also think that until the county manifests such intent to refile, the trial court was right in concluding that the appellees, both highly able and competent and experienced attorneys, have done all which is necessary to achieve a favorable and desired result for their clients.
I would affirm the award of attorneys' fees entered by the trial court.
NOTES
[1] The subject properties lie east of the Palmetto Expressway, north of Miller Road near 72nd Avenue.
[2] By § 127.01(2) Fla. Stat., F.S.A., when the necessity to take, for park purposes, was raised by the defendants, that issue was to be determined by the court (at a pre-trial hearing according to § 73.061 Fla. Stat., F.S.A.), and, by virtue of § 127.01(2), with no presumption in favor of the county's right to take for such purpose resulting from its determination therefor by resolution or petition, and with the taking for such purpose to be permitted only as to the land for which it should be determined by the court there was a public necessity. In that posture, where the issue of the right to take was raised, the county would be required to show reasonable necessity and the landowners would be in a position of defending against the same. See Peavy-Wilson Lumber Co. v. County of Brevard, 159 Fla. 311, 31 So.2d 483; Palm Beach County v. Inlet Bay Club, Fla.App. 1973, 280 So.2d 692.
[3] At the fee hearing the attorney for the county stated: "We dismissed for a number of reasons. We are still under a mandate to acquire this property and as I publicly stated in the presence of these gentlemen before the County Commission, because we dismissed this suit, that didn't mean we are walking away from the acquisition program."
[4] The requirement for the payment thereof is fixed by § 73.091 Fla. Stat., F.S.A., which the Supreme Court has held is applicable where an action in eminent domain is voluntarily dismissed by the petitioner before trial. Hallendale v. Chatlos, Fla. 1970, 236 So.2d 761. That principle was applied by this court in City of Miami Beach v. Manilow, Fla. App. 1971, 253 So.2d 910. That the attorneys for defendant Oolite were aware thereof is evident, where the brief of that party states: "The law is well established that where the condemning authority files a voluntary dismissal, the defendants are entitled to recover costs, including attorneys fees."
[5] Provos v. Provos, Fla. 1950, 44 So.2d 656; Folmar v. Davis, Fla.App. 1959, 108 So.2d 772; City of Miami Beach v. Cummings, Fla. App. 1969, 228 So.2d 109; Canal Authority v. Ocala Mfg. Ice & P. Co., Fla.App. 1971, 253 So.2d 495; Manatee County v. Harbor Ventures, Inc., Fla.App. 1975, 305 So.2d 299.
[6] "A court is without power to measure an attorney's fee except on the basis of quantum meruit or a quid pro quo." Brickell v. DiPietro, 152 Fla. 429, 12 So.2d 782.

"A quantum meruit has reference to or means as much as he reasonably deserves for his services." Baruch v. Giblen, 122 Fla. 59, 164 So. 831.
[7] See Manatee County v. Harbor Ventures, Inc., Fla.App. 1975, 305 So.2d 299, at 301.
[8] In this connection, in Baruch v. Giblen, 122 Fla. 59, 164 So. 831, the Supreme Court said:

"* * * Lawyers are officers of the court. The court is an instrument of society for the administration of justice. Justice should be administered economically, efficiently, and expeditiously. The attorney's fee is, therefor, a very important factor in the administration of justice and if it is not determined with proper relation to that fact it results in a species of social malpractice that undermines the confidence of the public in the bench and bar. It does more than that. It brings the court into disrepute and destroys its power to perform adequately the function of its creation."
[9] In the evidence there were no formal appraisals or expert testimony as to the value of the properties. There was a reference in a document in the record to all of the property involved in the case having been appraised at a figure of slightly less than one million dollars. In the testimony of an attorney for one of the defendants, and in testimony of the fee witnesses, reference was made to the Oolite property as having been appraised at $1,200,000 and to the MacDonald Foundation property as having been appraised at $1,034,000. It was based on the latter values that the witness calculated the 5% fees and suggested their allowance.
[10] Fees amounting $200 per hour suggested by the county's witness, being in general conformity to, and actually in excess of the rate for payment of quantum meruit fees to defendants' attorneys for their services in condemnation proceedings which are dismissed prior to trial, would appear to have been reasonable and even generous for the services in this case, consisting of conferences, minimal pleading and the taking or attendance at the taking of discovery depositions, with no court hearing having been held on the merits of the preliminary issue to which the services related.

In Canal Authority v. Ocala Mfg. Ice & P. Co., Fla.App. 1971, 253 So.2d 495, on an appeal by the petitioner from a judgment in an eminent domain action, one of the defendant landowner appellees, as to whose property the action had been dismissed prior to trial, cross assigned as error an allowance of $15,000 attorney's fees as being inadequate. In ruling on that feature the appellate court noted that the time which had been expended by the attorneys for that defendant prior to the dismissal was 662 hours, and that affidavits of three experts submitted by that fee claimant had recommended fee allowances ranging from $50,000 to $63,000 (which would be approximately $90 per hour). The court held the allowance of $15,000 (approximately $22.50 per hour) was inadequate, and remanded the cause for redetermination of the fee.
In City of Miami Beach v. Manilow, Fla. App. 1971, 253 So.2d 910, in which an action in eminent domain was dismissed by the petitioner prior to trial, this court affirmed, as not excessive, an allowance to the defendant of $50,000 for attorney's fees, where the time expended by the attorneys in said matter prior to the dismissal was 630 hours (amounting to approximately $80 per hour).
See also Manatee County v. Harbor Ventures, Inc., supra. There, in an eminent domain action the county sought to take certain property for the purpose of constructing thereon a sewage treatment facility, submitting a value estimate of $1,119,000. Through a lawyer, the defendants sought to establish the right to additional compensation for severance damages to their adjoining lands. Following negotiations and other services which were listed in the opinion, the parties agreed to a valuation of $1,400,000, and judgment in eminent domain was entered. The appeal by the county concerned the fee allowance for the services of defendants' attorney, which the county contended was excessive. The time expended by the attorney was 155 hours. The fee allowed by the trial court amounted to $517 per hour [slightly more than one-half of the "hour rate" of the fees allowed in the instant case]. The appellate court in that case held the fee allowance was "excessive to the extent of being beyond the bounds of reasonable discretion", reversed the order therefor and remanded the cause for the purpose, as there stated, "to permit the trial court to set a fee consistent with the guidelines set forth in this opinion".
[11] In Brickell v. DiPietro, supra, the Supreme Court said:

"* * * Testifying to a reasonable fee is delicate business and should be done with a view to common sense realism, that is to say, it should pose an amount that public standards will approve for the work done, the time consumed, and the skill required. Strict observance of these elements begets public confidence but evidence which side steps them has no relation to them or that which is given as a professional courtesy affords no aid in reaching a just judgment. * * *"