645 So.2d 7 (1994)
SARASOTA COUNTY, a political subdivision of the State of Florida, Appellant,
v.
Gene EX and Elaine Ex, his wife, Appellees.
No. 93-01639.
District Court of Appeal of Florida, Second District.
August 3, 1994.
Richard E. Nelson of Nelson Hesse Cyril Smith Widman Herb Causey & Dooley, Sarasota, and Jorge L. Fernandez, County Atty., and H. Ray Allen, III, and Alan W. Roddy, Asst. County Attys., Sarasota, for appellant.
S. William Moore and Alan E. DeSerio of Brigham, Moore, Gaylor, Ulmer & Schuster, Tampa, for appellees.
ALTENBERND, Judge.
Sarasota County appeals a final judgment in an action filed by Gene and Elaine Ex in September 1991. The Exes sought monetary compensation for land they had deeded to the county in August 1983. We conclude the statute of limitations for this action expired before it was filed. Although the Exes describe their action as a claim for inverse condemnation arising out of the county's unconstitutional demand for a dedication of their land, they are actually seeking additional consideration for a valid deed they granted to the county more than eight years ago.

I. A WORD ABOUT MOTIONS
Before reaching the merits of this case, we comment upon a problem that frequently occurs in appellate motion practice. This case is merely a good example of the problem. There is a tendency for motions to proliferate because lawyers simply will not permit an adversary to have the last word.
During 1993, this court received approximately 8500 motions, excluding motions for rehearing and rehearing en banc. Many, if not most, of those motions were filed in good faith and in an effort to facilitate the timely resolution of the relevant appeal. We do, however, receive unnecessary or inappropriate motions in many cases. Occasionally, we deny such a motion with a citation to Dubowitz v. Century Village East, 381 So.2d 252, 253 (Fla. 4th DCA 1979), as a reminder that this court, as well as the Fourth District, suffers from "acute motion sickness."
This case involves a more severe problem. It demonstrates the all-too-common process by which one questionable filing results in a volley of unnecessary motions, responses, replies, answers, etc. Lawyers need to realize *8 that appellate motion practice is not a game of ping-pong in which the last lawyer to serve wins.
During oral argument, the Exes' attorney received numerous questions from the court. The attorney was legitimately concerned that the issues might not be briefed as thoroughly as the court desired. Accordingly, he filed two notices of supplemental authority a few days after the oral argument. The notices did not further argue the case, but cited a few cases and identified the issues discussed in those cases. Although it would have been better if these cases had been cited prior to oral argument, the notices were clearly filed in good faith and were not abusive under Florida Rule of Appellate Procedure 9.210(g). Cf. Ogden Allied Servs. v. Panesso, 619 So.2d 1023 (Fla. 1st DCA 1993) (notice of twenty-two supplemental authorities on afternoon before oral argument is abuse of rule).
These notices generated the following filings:
1. The county's motion to strike appellees' two notices of supplemental authority.
2. The Exes' reply to motion to strike appellees' two notices of supplemental authority.
3. The county's motion to strike reply to appellees' notices of supplemental authority.
4. The Exes' response to motion to strike reply to appellees' notices of supplemental authority.
None of these filings was necessary or helpful to this court. Rather than facilitate this court's operation, they slowed the operation and caused needless administrative labor. These motions undoubtedly have cost clients and taxpayers unnecessary dollars.
We do not assess fault for these filings on one party or the other, and we impose no sanction. We simply remind attorneys, that, as officers of the court, they must exercise restraint when filing motions. In most cases, motions to strike motions and other similar pleadings are simply unauthorized responses that demonstrate an attorney's lack of self-discipline.

II. STATUTE OF LIMITATIONS CONCERNING A CLAIM FOR ADDITIONAL COMPENSATION ON A VALID DEED
In 1983, the Exes owned four acres of property on the south side of DeSoto Road in Sarasota County on which they sought to develop thirty-six condominium units. During the permitting process, the county informed them that the permits would not be issued unless the Exes deeded to the county a ten-foot strip of land along the right-of-way for DeSoto Road. The testimony at trial established that the Exes verbally protested this requirement, but decided they must grant the deed to avoid a delay in their development.
On August 11, 1983, Mr. Ex sent a handwritten letter to the county enclosing a deed to the ten-foot strip of land. The letter states:
Dear Sir:
Enclosed is a deed giving ten feet along DeSoto Road to Sarasota County for future road widening the length of my property.
Please advise the value you would place on this donated property, and any forms necessary to be submitted to Internal Revenue Service for my future tax considerations.
Thank you for your cooperation.
 Sincerely,
 /s/
 Gene Ex
The deed reflects consideration of "one dollar and other valuable considerations paid." It is undisputed that the county recorded the deed and sent the Exes the following reply:
Dear Mr. and Mrs. Ex:
Sarasota County appreciates you contributing the additional road right of way for Desoto [sic] Road, per OR 1612/19-20.
This contribution of 6183 sq. ft. of road frontage has a value of $23,800.00.
 Sincerely,
 /s/
 Jack Clark
 Real Property Office
*9 Following these transactions, the county issued the necessary permits and DeSoto Company, a corporation in which the Exes were principal shareholders, began construction. The Exes filed tax returns receiving limited tax savings for this $23,800 "donation" of land. Thereafter, problems developed and the project lender foreclosed on the remaining property. The Exes lost any legal interest in the development through a judicial sale on December 29, 1987.
The Exes filed this action on September 6, 1991. Their complaint maintained that the county ordinances in 1983 did not validly require them to dedicate this property and that the county's action in requiring a deed in exchange for a building permit constituted inverse condemnation. Among several defenses, the county raised the statute of limitations and waiver or estoppel.
After an evidentiary hearing, the trial court rejected all of the defenses and specifically found that the Exes' dedication and deed were "involuntary." It entered a judgment in favor of the Exes for $23,800, plus 12% interest from August 11, 1983, and reserved jurisdiction to award attorneys' fees. The county then filed this timely appeal.
The issues in this appeal are difficult to articulate because of the unusual facts involved. Both parties have argued rather broad issues concerning the applicable statute of limitations and the nature of estoppel in a typical inverse condemnation case. The county primarily argues that this action should be controlled by a four-year statute of limitations under section 95.11(3), Florida Statutes (1991). The Exes contend that in a typical inverse condemnation action, a government agency is similar to an adverse possessor, and that the majority of jurisdictions apply a longer statute of limitations for adverse possession, in the absence of a specific statute for inverse condemnation. See White Pine Lumber Co. v. City of Reno, 106 Nev. 778, 801 P.2d 1370 (1990); Charles C. Marvel, Annotation, State Statutes of Limitations Applicable to Inverse Condemnation or Similar Proceedings By Landowner to Obtain Compensation for Direct Appropriation of Land Without the Institution or Conclusion of Formal Proceedings Against Specific Owner, 26 A.L.R.4th 68 (1983).
In a typical condemnation case, the county files an action to obtain title to property for a public use. § 73.021, Fla. Stat. (1993). In exchange for a judgment transferring title, the county must pay just compensation. § 73.101, Fla. Stat. (1993). In a typical inverse condemnation action, the landowner files an action alleging that it holds title to the property and that the county has committed acts that substantially interfere with the owner's property rights. In that action, the landowner seeks to compel the county either to take full title to the property and pay just compensation, or to purchase a limited interest in the property. See Florida Eminent Domain Practice and Procedure, Inverse Condemnation § 13.5 (4th ed. 1988).
In this case, the Exes formally transferred title to the county in 1983. The deed may not have been cheerfully given and the act may have been "involuntary" for some purposes, but the deed was not a void instrument. As of August 11, 1983, the county owned this real property, and the Exes no longer possessed a legal interest in it. The Exes have not alleged that the deed was voidable because of duress, incompetency, fraud, or any other reason. See generally 19 Fla.Jur.2d Deeds §§ 83-100 (1980). Moreover, this record would not support such theories.
Thus, the narrow issue actually presented by the Exes' action is whether a former landowner may seek additional consideration from a county for land validly deeded to the county more than eight years ago. We conclude that such an action is not governed by the statute of limitations for adverse possession.[1]
The reason that many courts have applied the statute of limitations for adverse possession to an action for inverse condemnation is that
the owner's right of recovery is founded upon and grows out of his title to land and that until such title is lost by adverse possession the owner should have the right to maintain an action to recover that which represents the property itself.
*10 Frustuck v. City of Fairfax, 212 Cal. App.2d 345, 374, 28 Cal. Rptr. 357, 374-75 (1963), cited in White Pine Lumber Co., 801 P.2d at 1371. The close analogy between inverse condemnation and adverse possession disappears when the landowner has already transferred title to the property by a valid deed to the governmental agency. Therefore, the statute of limitations for an adverse possession action does not apply to the Exes' action for additional consideration from the county for property they deeded to it more than eight years ago. See also Hart v. City of Detroit, 416 Mich. 488, 331 N.W.2d 438 (1982) (adverse possession statute of limitations did not apply where plaintiffs lost all interest and title to property for nonpayment of taxes).
We do not need to decide whether this action is governed by a four-year limitations period under section 95.11(3), as urged by the county. The longest possible statute of limitations for this case is seven years from the date the Exes last possessed this property. § 95.14, Fla. Stat. (1991). This statute, which governs actions founded on title to real property, or to rents or service from it, would bar the Exes' action, filed more than eight years after they transferred title to the county.
Reversed and remanded.
CAMPBELL, A.C.J., and FULMER, J., concur.
NOTES
[1] Whether a typical inverse condemnation action is controlled by the statute of limitations for adverse possession is not an issue that we are required to resolve.