696 So.2d 888 (1997)
DEPARTMENT OF ENVIRONMENTAL PROTECTION, etc., et al., Appellant,
v.
Frank GIBBINS, Appellee.
No. 96-531.
District Court of Appeal of Florida, Fifth District.
June 13, 1997.
Rehearing Denied July 18, 1997.
Steven A. Medina, Assistant General Counsel, Tallahassee, for Appellant Department of Environmental Protection.
Thomas M. Burke and Chris N. Kolos of Cabaniss & Burke, P.A., Orlando, for Appellant Kerr-McGee Refining Corporation.
Peter B. Heebner of Heebner, Baggett and Prechtl, P.A., Daytona Beach, for Appellee.
THOMPSON, Judge.
The Florida Department of Environmental Protection ("DEP") appeals an order awarding attorney's fees and costs to Frank Gibbins pursuant to chapter 73. The issue on appeal is whether DEP's actions in seeking access to Gibbins' property to investigate and remediate petroleum contamination, as mandated by section 376.30(4), constituted a taking. Because we hold that no direct or inverse condemnation occurred, we reverse the award of attorney's fees and costs.

FACTS
Kerr-McGee Refining Corporation[1] ("Kerr-McGee") owned a service station in Volusia County before 1986. During this time of ownership, gasoline was discharged from underground storage tanks. DEP and Kerr-McGee stipulated to an order requiring Kerr-McGee to remediate petroleum contamination on its property and to investigate possible contamination on Frank Gibbins' nearby property. Kerr-McGee cooperated with DEP to define the extent of contamination by drilling monitoring wells and bore holes, and by beginning an environmental assessment in early 1986, which continues to this date. Kerr-McGee was responsible for the clean up, and for the wells and bore holes on the property.
Gibbins, who owned a gas station downhill from Kerr-McGee's property, gave Kerr-McGee *889 permission on 29 September 1990 to drill a monitoring well on his property. The well was actually dug on 21 October 1990. In mid-1993, Kerr-McGee sought Gibbins' permission to place additional wells on his property. Gibbins refused permission unless Kerr-McGee signed a release which would indemnify Gibbins from any and all claims arising out of the existence of any discharge on his property, including discharge from his own tanks. Kerr-McGee refused to sign the release.
DEP notified Gibbins that it was seeking entry upon his land to drill, install and utilize a number of wells. On 21 June 1994, DEP served Gibbins with an administrative order for access to his property for contamination assessment or remedial action. See §§ 376.303(4), 403.061(8), and 403.121(2), Fla. Stat. (1993). Gibbins contested the order and argued there was an unresolved legal issue concerning compensation to a property owner who was ordered to provide his real property to DEP for the installation of the wells. Gibbins filed a petition with DEP, pursuant to chapter 120, requesting a formal hearing. He alleged that DEP was attempting to take his property by eminent domain and that therefore he was entitled to compensation, attorney's fees and costs. The petition was never heard. On 28 October 1994, DEP withdrew its administrative action and, on 15 December 1994, filed a complaint for temporary and permanent injunctive relief in the circuit court seeking access to Gibbins' property to install wells and a recovery system, and seeking to enjoin Gibbins from denying DEP access to his property. See § 403.131, Fla. Stat. (1993).
On 30 January 1995, DEP moved to voluntarily dismiss its petition, alleging that access to Gibbins' property was no longer necessary. The trial court granted the motion. On the same day, Gibbins filed a motion for attorney's fees pursuant to sections 73.091 and 73.092, Florida Statutes, asserting that he had defeated "an order of taking."
On 6 July 1995, the court ruled that DEP's administrative order for site access and petition for injunctive relief constituted a taking. The court wrote:
1. The court finds that the administrative proceedings and the complaint filed herein constitute a "taking" of [Gibbins'] property as defined by Art. X, § 6, Fla. Const. (1968).[2]
2. [Gibbins] is entitled to an award of its attorney's fees incurred in the defense of the "taking" pursuant to § 73.091 and § 73.092, Fla. Stat.
3. Accordingly, the Motion for Entitlement to an Assessment of Attorney's Fees dated February 16, 1995 is hereby GRANTED.
The court awarded Gibbins $29,306.25 in attorney's fees and costs at a subsequent hearing at which expert witnesses testified about the reasonableness of the fees.

DISCUSSION
DEP is charged by the legislature with enforcing sections 376.30-376.319 to ensure the quality of surface and ground waters in the state. See §§ 376.30-376.319, Fla. Stat. (1995), The Pollution Discharge Prevention and Removal Act. The legislature authorizes DEP to exercise the state's "police power" to gain access to property to conduct contamination assessments or remedial actions. Section 376.303(4), Florida Statutes, provides in pertinent part:
The Department [DEP] may require a property owner to provide site access for activities associated with contamination assessment or remedial action. Nothing herein shall be construed to prohibit an action by the property owner to compel restoration of his property or to recover damages from the person responsible for the polluting rendition requiring assessment or remedial action activities.
§ 376.303(4), Fla. Stat. (1995).
Gibbins argues that DEP's effort to obtain access to his land to discharge its duties was *890 an attempt by DEP to exercise the state's power of eminent domain. Gibbins conceded at oral argument that the administrative order itself did not result in an inverse condemnation.[3] Rather, he argues that although DEP did not enter upon his land to drill wells and bore holes, the legal effort expended on his behalf to defeat the entry entitles him to attorney's fees and costs. Gibbins relies upon Rubano v. Department of Transportation, 656 So.2d 1264 (Fla.1995), Department of Transportation v. Ideal Holding Company, 480 So.2d 243 (Fla. 4th DCA 1985), rev. denied, 491 So.2d 278 (Fla.1986), and County of Volusia v. Pickens, 435 So.2d 247 (Fla. 5th DCA), rev. denied, 443 So.2d 980 (Fla.1983) to support his argument. He argues DEP's action, whether deliberate or inadvertent, was highly intrusive behavior, and hence a taking. We disagree.
To commence condemnation proceedings, "the [state agency] files an action to obtain title to property for a public use." Sarasota County v. Ex, 645 So.2d 7, 9 (Fla. 2d DCA 1994), rev. denied, 654 So.2d 918 (Fla.1995).[4] Florida law provides strict guidelines regarding the content of eminent domain petitions. See §§ 73.021(1)-(7), Fla. Stat. (1993). Nothing short of a petition which adheres to the statutory guidelines will commence condemnation proceedings under chapter 73. See City of Ocala v. Red Oak Farm, Inc., 636 So.2d 81, 83 (Fla. 5th DCA 1994) ("[T]he statutory provisions of a petition in eminent domain, as defined by section 73.021 ..., must be strictly complied with for a valid condemnation."). In this case, DEP filed a complaint seeking to enjoin Gibbins from denying DEP and Kerr-McGee indefinite access to his property. Certainly, this could result in a compensable taking by inverse condemnation, even if temporary. Tampa-Hillsborough County Expressway Authority v. A.G.W.S. Corporation, 640 So.2d 54, 58 (Fla.1994). However, on its face, DEP's pleading does not evidence an affirmative effort to acquire or take title to any part of Gibbins' property, as would a petition in eminent domain. Further, the record demonstrates that the only activity that could be construed as a taking is the Kerr-McGee well on Gibbins' property, which is there by agreement.
Although Gibbins insists that the proposed physical intrusion onto his property would result in a taking, there is no case law holding that an administrative order and petition for an injunction constitute a de facto petition in eminent domain sufficient to initiate condemnation proceedings. Certainly, there is no case law holding, as the trial court did, that the order and petition themselves constitute a taking. At most, DEP's actions could have resulted in an inverse condemnation. The pleadings before the trial court were insufficient to commence condemnation proceedings, and Gibbins was therefore not entitled to attorney's fees pursuant to section 73.091.
Accordingly, we reverse the award of attorneys' fees because there was neither an eminent domain proceeding nor an inverse condemnation.
REVERSED and REMANDED.
COBB and W. SHARP, JJ., concur.
NOTES
[1] Kerr-McGee filed a notice of joinder in this appeal. Although it filed a co-appellant's initial and reply brief, its arguments virtually echo those advanced by DEP. Thus, only DEP's arguments are addressed.
[2] Article X, § 6, Florida Constitution reads in pertinent part:

(a) No private property shall be taken except for a public purpose and with full compensation therefor said to each owner or secured by deposit in the registry of the court and available to owner.
[3] Gibbins' concession is well-taken since the record does not reveal any physical appropriation or substantial loss of access to his property. Palm Beach County v. Tessler, 538 So.2d 846 (Fla. 1989).
[4] Entitlement to costs and attorney's fees under section 73.091 survives voluntary dismissal of a petition. See Dade County v. Oolite Rock Co., 311 So.2d 699 (Fla. 3d DCA 1975), cert. denied, 330 So.2d 20 (Fla.1976).