354 So.2d 100 (1978)
DIVISION OF ADMINISTRATION, STATE of Florida DEPARTMENT OF TRANSPORTATION, Appellant,
v.
Richard S. DENMARK et al., Appellees.
No. 77-987.
District Court of Appeal of Florida, Fourth District.
January 4, 1978.
Winifred Sheridan Smallwood and H. Reynolds Sampson, Gen. Counsel, State of Florida Dept. of Transp., Tallahassee, for appellant.
Spencer B. Gilbert of Gilbert & Horowitz, P.A., Fort Pierce, for appellee, Sibyl Hayes.
LETTS, Judge.
This is an interlocutory appeal from an award of $85,000 in attorneys fees in a condemnation suit which culminated in a verdict of $349,000 plus $16,600 in interest and $27,000 in costs taxed. We affirm.
The facts are that the State, all the way through trial, would only offer $117,000 for the land taken, claiming a special enhancement to the remainder of over $500,000. The property owner's attorney, a lawyer of long standing and much experience in condemnation cases, secured an award of $365,600 with no special enhancement deduction thereby benefiting his client by close to quarter of a million dollars over the highest offer. The fee amounted to some 35% of this benefit achieved.
The successful lawyer testified to over 200 hours actual legal work plus 50 more of outside preparation for a grand total of at least 250 hours, resulting in a fee of approximately $340.00 per hour. The only witness called on at the hearing on attorneys fees also testified that the case was worth a fee between $85,000 and $90,000. The judge awarded $85,000.
We are of the opinion that the fee was high, but find it difficult to reverse and *101 remand as an abuse of the trial judge's discretion. Section 73.092 of the Florida Statutes, recently enacted, provides as follows:
In assessing attorney's fees in eminent domain proceedings, the court shall consider:
(1) Benefits resulting to the client from the services rendered.
(2) The novelty, difficulty, and importance of the questions involved.
(3) The skill employed by the attorney in conducting the cause.
(4) The amount of money involved.
(5) The responsibility incurred and fulfilled by the attorney.
(6) The attorney's time and labor reasonably required adequately to represent the client.
However, under no circumstances shall the attorney's fees be based solely on a percentage of the award.
This section clearly leaves the award of attorneys fees to the discretion of the court, within the above set parameters. In the case now before us, the client received an enormous benefit from the representation. The attorney must have used great skill (unless we are to assume that the State's appraisal of value was a deliberate underestimate). Certainly $250,000 is a large amount of money involved. The lawyer also resolved an important question concerning the alleged special enhancement and demonstrably fulfilled his responsibility to the utmost. There can be no doubt as to the complexity of the suit which required the property owner to obtain three experts whose fees totalled nearly $27,000. (The appraiser alone received $16,627). Furthermore, the expenditure of 250 hours on one case, translates into six exclusive weeks of this practitioner's time. Finally, although the statutory wording makes it clear that the award cannot be based "solely on a percentage of the award" (emphasis supplied), the very language employed reveals that the legislature contemplates that a fee based in part on a percentage, is a cognizable factor, even although the resulting fee in condemnation cases is certain rather than contingent.
On the other hand, the appellant cites several recent cases from other districts which, when compared to the case at bar, might mandate reversal. One such is Manatee County v. Harbor Ventures, Inc., 305 So.2d 299 (Fla. 2DCA 1975) in which a $70,000 fee for 135 hours work was found to be excessive although the attorney's efforts resulted in a $300,000 increase in the award.[1] In Manatee, the court noted that a fee per hour of $517.00 was too much. Yet another recent case, from the Third District, is Dade County v. Oolite Rock Company, 311 So.2d 699 (Fla. 3 DCA 1975). In Oolite Rock, a fee of $111,700 was awarded for 118 hours work despite the fact that the supporting expert testimony was challenged by the political subdivision which used an opposing witness who recommended quantum meruit fees based on $200.00 per hour. The Third District reversed the award as excessive noting that the fee was the equivalent of $946.00 per hour. However, the hearing on attorneys fees in Oolite Rock came about because of a voluntary dismissal prior to trial. Thus, the litigation was far from over.
As can be seen from the foregoing, there are substantial fact differences between the two cases discussed in the preceding paragraph and the case now before us. Notably, the fee here is $340.00 per hour, vis a vis $946.00 and $517.00, and the instant suit involved a full blown trial brought to a final conclusion at that level.
Notwithstanding, we are aware that compensation at the rate of $340.00 per hour is mind boggling to most Americans, especially when it is not realized that such represents gross income rather than net profit. Furthermore, such awards should always be sharply scrutinized when we consider that the frustrated taxpayer is, by statute, called upon to make this payment, not the particular client receiving the benefit.
*102 It would appear that recent appellate decisions in condemnation cases are leaning towards an hourly rate without actually mandating one. This is evidenced by repeated comparison of the fee awarded with the number of attorney hours, resulting in reversal for excessiveness. The most recent of these, dubbed Oolite "Two" [348 So.2d 902 (Fla. 3 DCA 1977)] is part of the same Oolite case already referred to, before the Third District again for resolution of the same attorneys fees. The last visit to the Third District of this portion of Oolite "One" resulted in a fee of $60,000 for 66 hours, being declared excessive. Accordingly, upon remand the trial judge halved the fee to $29,000 for the same 66 hours. Reviewing this fee for a second time, a new panel held that while the fee should not "necessarily" be geared to an hourly rate, $439.00 per hour was still excessive for "the kind of work involved". Absent the complete record we cannot say that we would not agree with the result, but the stated reasons for the fixing of the fee at $212.12 per hour instead, were not the yardsticks we would have used.
A blanket opinion that $212.00 per hour was gracious plenty, we could not argue with, but Oolite "Two" adopts the theory that the fee should be smaller because so much of the lawyer's time was spent on pre-trial preparation. Thus, for example, the court reasoned that legal fees for a mere deposition should be less because it:
... usually is handled by a junior member of a firm. If a senior partner ... wishes to do such work himself, the fact that he does so does not raise its type level. (P. 904 of 348 So.2d).
Quite apart from the fact that astute deposing can be of paramount importance, we feel that such reasoning discriminates against the smaller law firms and punishes a senior partner if he happens to pay personal attention to the quality preparation of his client's cause. Moreover, the court in Oolite "Two" made no mention of the applicable statute, first above quoted, and while it did refer to Canon 2 of the Code of Professional Responsibility [DR2-106(B)], there is no reference to the "results obtained" [Paragraph 5, DR2-106(B)].
The culmination of both Oolite cases was a voluntary dismissal after an answer filed challenged the necessity of the taking. (See Footnote 2, P. 701 of 311 So.2d, Oolite "One"). We are aware that this result obtained was not of the cash variety but it stopped the condemnation altogether, not often accomplished.[2]
To us, the problem in commanding the trial court to set the fee by "so much per hour", is that such may penalize more competent counsel. It is axiomatic that an attorney of great skill, experience and expertise in condemnation cases will require less time to achieve a better result for his client than an inferior inexperienced counterpart. Are we going to penalize the former for being superior?
We note that counsel in this case was experienced and somewhat modest about his estimate of time spent. (Both he and his witness testified that there must have been more time spent than reported). This case most probably would not have been appealed, had counsel indicated that he put in 500 hours work, which he might well have done had he been inexperienced, and the resulting fee calculated at $170.00 per hour instead of $340.00.
Finally, the case at bar reveals that the expert witness' testimony as to the appropriateness of an $85,000 fee went unchallenged by the State except for routine cross examination which left his testimony unshaken. It is difficult to fault the trial judge for accepting same, although he is obviously not bound to do so. Oolite "One", supra, 311 So.2d at 702. We are of the opinion that if the State wishes to successfully oppose such expert testimony it should produce contra evidence to bolster its position. It did not do so in this case, but instead is asking us to substitute our version *103 of a justifiable fee for that of the trial judge who heard the case and was able to evaluate all the criteria set forth under the statute. Such a substitute of judgment is improper unless a clear abuse of discretion is shown. Canal Authority v. Ocala Manufacturing Ice and Packing Co., 253 So.2d 495 (Fla. 1DCA 1971); Division of Administration, State Department of Transportation v. Condominium International, 317 So.2d 811 (Fla. 3 DCA 1975).
In addition we would comment that political subdivisions would largely avoid much of these fees and costs, by making more realistic appraisals of the land to be condemned. In this case, they were 212% wrong, according to the verdict.
In conclusion, it is our view that if attorneys fees in condemnation suits are to be calculated only on an hourly basis, this should be clearly spelled out by the legislature.[3] It should not be left to the courts to engraft mandatory hourly rates onto a statute which specifically does not restrict itself to same, unless the fee is blatant and outrageous as, for example, it clearly was in Oolite "One", supra, (i.e. $946.00 per hour). In fact, we are of the opinion that if we set a mandatory hourly rate we are acting in derogation of the statute.
Rightly or wrongly, the public gorge is rising over the size of attorneys fees and the profession faces more and more politically attractive legislative curtailment of fees, unless restraint is exercised. Appellant's counsel, in one of her characteristically well written briefs, cites an ancient proverb equating lawsuits to "fruit trees planted in a lawyer's garden." Lawyers had better have a care, or the lawmakers will expressly limit the amount of fruit which can be harvested from those trees.
We deny the appellee's petition for further attorneys fees on appeal. He has been but defending his own already generous award at the trial level and ought to be happy to do so, for free, in the light of this result. We see no need to require the State to compensate him further.
AFFIRMED.
CROSS and DOWNEY, JJ., concur.
NOTES
[1] Note however, in Manatee, the case did not go to trial and the value was arrived at by stipulation.
[2] The answer, and preparation therefor, resulting in a dismissal by the plaintiff seems to us to be a classic example of the paramount importance of pre-trial expert preparation, which should not be downgraded.
[3] If such be done, it is to be hoped that the other experts, including the appraisers be likewise required to account for their time, on an hourly basis, for one grows weary of only attorneys being type cast as buccaneers.