387 So.2d 446 (1980)
MANATEE COUNTY, Appellant,
v.
FLORIDA PUBLIC EMPLOYEES RELATIONS COMMISSION and Manatee County Municipal Employees, Local 1584, Afscme, Afl-Cio, Appellees.
No. OO-1.
District Court of Appeal of Florida, First District.
August 14, 1980.
*447 James M. Blue of Hogg, Allen, Ryce, Norton & Blue, Tampa, for appellant.
Michael G. Canar, Fort Lauderdale, for AFSCME; and Martha A. Curtis, Tallahassee, for Public Employees Relations Commission.
LARRY G. SMITH, Judge.
Manatee County appeals the order of appellee, Florida Public Employees Relations Commission, which certified Manatee County and Municipal Employees, Local 1584, AFSCME, as the exclusive collective bargaining agent for a group of county employees. We find merit in what we consider to be the major point presented, that is, the County's contention that the certification proceedings should be invalidated because of PERC's procedural error in denying the County the opportunity to present evidence supporting the agreement of the County and the Union to exclude Comprehensive Employment Training Act (CETA) employees from the proposed bargaining unit. We reverse.
Local 1584's petition for certification sought representation of a proposed "blue collar" bargaining unit. The petition specifically excluded from the proposed unit, "supervisory and managerial personnel and CETA workers." These exclusions were agreed to by the County. A hearing was held on October 13, 1976, pursuant to Rule 8H-3.18, Florida Administrative Code, following which the hearing officer issued his report. After receipt and review of the hearing officer's report, on May 27, 1977, PERC issued its analysis and proposed order, *448 which included a finding and ruling, contrary to the Union and the County's stipulation, that CETA employees should properly be included in the bargaining unit.
On June 22, 1977, the County filed its exceptions to PERC's order and requested a further evidentiary hearing to present evidence supporting the stipulation to exclude CETAs. PERC denied the request. The County repeatedly renewed its request for a further hearing, but PERC adamantly refused to permit it, even though it ordered a further evidentiary hearing on other matters. Significantly, a period of more than thirteen months elapsed between the date of the County's first request for a further hearing and the election itself, which was finally held on July 28, 1978.
In capsule form, the County's contentions before this court may be summarized briefly as follows: The Union filed a petition excluding CETA employees; the County agreed to the exclusion; a hearing was held at which neither the County nor the Union sought to introduce evidence on the reasons for exclusion of CETA employees; and after the close of the hearing the Commission ignored the petition and stipulation and included CETA employees in the bargaining unit.
PERC's May 30, 1978 order finally rejected the County's objections to inclusion of CETA employees, denied the County's request for an opportunity to present further evidence on the question, and ordered an election. The order stated, in part:
With respect to the CETA issue, the County asserts that it was duped into not litigating the status of CETA employees by its alleged stipulation with AFSCME as to the exclusion of CETA employees from the unit. The County lugubriously avers that, as a result of its agreement with AFSCME, it "... considered it totally unnecessary to submit testimonial evidence during the Representation Hearing held on October 13, 1976, to support the exclusion of CETA workers..."
In Orange County P.B.A. and City of Sanford, 4 FPER § 4119 (1978), the Commission held:
Section 447.307(4)(a-h) contains a list of criteria which the Commission must consider when it defines bargaining units proposed by petitions for certification. It is elementary that, in order for the Commission to consider these enumerated criteria, evidence with respect to the application of these criteria to the facts of each case must be adduced for Commission consideration. The Commission's statutory responsibility to consider such evidence exists independently of the willingness of the parties in representation cases to present such evidence. Where no party is willing to present evidence as to one of the enumerated statutory criteria, it is incumbent upon the PERC Hearing Officer, whose duty it is under Fla. Admin. Code Rule 8H-3.18(c) "... to inquire fully into all matters at issue and to obtain a full and complete record . ..", to shed light upon relevant areas which, absent his inquiry, would remain enshrouded in mystery with the connivance of the parties. 4 FPER, at p. 228.
Since neither the County nor AFSCME desired to present evidence concerning CETA employees, it was incumbent upon the Hearing Officer to inquire into the issue; he did so. The County's failure to adduce additional evidence beyond that adduced via the Hearing Officer's questioning does not constitute a Commission denial of due process to the County. (PERC's order, May 30, 1978)
PERC's view, according to the order, is that stipulations by the parties are not "stipulations of fact"; they are simply "statements of coincidence of position" by the parties, "which do not in any way bind this Commission ...," and further:
... The Commission, not the parties, is mandated by Section 447.307(3) to define appropriate bargaining units. All such unit "stipulations" must be subjected to Commission scrutiny based on competent evidence in the record. Should *449 representation case parties fail to submit evidence in support of their "stipulation," no jurisprudential sleight of words may transmute their failure to present evidence in support of their position into a Commission denial of the opportunity to present such evidence. (PERC's order, May 30, 1978)
Upon review of the record and consideration of the briefs and arguments presented by the parties, we are convinced that PERC's stated position with respect to "stipulations" is not in accord with its previous pronouncements, or, even if viewed as arguably consistent, it was misapplied in this case; and we are not persuaded by PERC's argument that the County's right to present further evidence on the CETA issue was forever foreclosed by PERC's assertion of paramount right, under Section 447.307(3)(a)(1), to unilaterally restructure a bargaining unit based upon its own independent inquiry into the appropriateness of the proposed unit. We are aware that this court, in School Board of Marion County v. Public Employees Relations Commission, 330 So.2d 770 (Fla. 1st DCA 1976), drew a distinction, so far as PERC's unit-defining authority is concerned, between so-called "voluntary recognition situations," under Section 447.307(1), Florida Statutes, and "non-voluntary certification petitions" under Section 447.307(2), et seq., Florida Statutes. Our ruling in this case does not in any way disturb the holding of the Marion County case. PERC's order acknowledges the requirement that the discharge of its duties in defining bargaining units requires that its decisions be based upon evidence presented. It is a fundamental rule of administrative law that agencies required to make a determination upon or after a hearing, in the exercise of a quasi-judicial function, cannot act solely on their own information. Thorn v. Florida Real Estate Commission, 146 So.2d 907 (Fla. 2nd DCA 1962); Coleman v. Watts, 81 So.2d 650 (Fla. 1955); 1 Fla.Jur. Administrative Law, § 86. See also City of Titusville v. Florida Public Employees Relations Commission, 330 So.2d 733 (Fla. 1st DCA 1976).
The Administrative Procedures Act provides that, unless precluded by law, informal dispositions may be made of any proceeding by stipulation, agreed settlement, or consent order. Section 120.57(3), Florida Statutes. We take judicial notice of the frequent, customary and mutually beneficial practice, in both judicial and administrative proceedings, of disposing of all or part of the issues by stipulations. It is necessary, therefore, for the administrative agency to take into account due process considerations when dealing with stipulations or agreements of the adversarial parties submitted during the course of administrative hearings. This court ruled in Gandy v. Department of Offender Rehabilitation, 351 So.2d 1133 (Fla. 1st DCA 1977), that it is "axiomatic" that neither a hearing examiner nor a court may, in the absence of consent, either express or implied, consider evidence received over objection which is outside the issues and then rely upon that evidence as the basis for his or its ultimate order. Further, said the court, "when the issues have been narrowed by stipulation and a party thereby lulled into responding to evidence adduced over his objections outside the issues, such evidence may not be used to his detriment."
PERC's contention that the County had full opportunity to present evidence supporting the agreed exclusion of CETA employees is correct, in the sense that no one prevented either the County or the Union from producing such evidence at the October, 1976 hearing. However, for us to limit our consideration to such a narrow review in this case would require us to overlook factors which to us have an important bearing upon the fairness and integrity of the decision-making process followed here. The County's reliance, with or without justification, upon its stipulation with the Union as precluding the necessity for presenting evidence on the CETA issue, at the October 1976 hearing, is not the only consideration. We have therefore considered the record, including the timeliness of the County's assertion of its reliance upon the stipulation, and the timeliness of its numerous requests *450 for the opportunity for a full presentation on the issue; the extent to which the County's request for a further hearing would have unduly prolonged the decision-making process, or unduly delayed or prejudiced the rights of the opposing party; the extent to which the evidence actually presented on the CETA issue measures up to the requirements of PERC's own rules; and the sufficiency of the evidence as the basis for a reasoned decision on the inclusion or exclusion of CETA employees from the bargaining unit. We have also considered whether the prejudice to the County resulting from denial of its request to present further evidence is sufficient to warrant setting aside the election and certification of the Union.
We think the record demonstrates the County's reliance upon its stipulation to exclude CETAs, and that, pursuant to that reliance it elected not to fully develop an evidentiary basis for CETA exclusion. At the hearing, James Brady, the AFSCME business agent, testified on cross-examination that it was not the intention of the Union to include any CETA employees in the bargaining unit, "Not at this time, or ever." He explained that while the Union was aware that CETAs do have collective bargaining rights, because of the nature of their employment it was the thinking of the Union that any attempt to organize CETA workers should be on the basis of a CETA unit, "since they have things in common other than what the public employees have." At a later point in his testimony, after the hearing officer presented further questions concerning CETA employees, the County attorney objected, contending that testimony about CETA would be immaterial. Then the following exchange between the hearing officer and counsel took place:
HEARING OFFICER: Well I think it is  I think there is testimony that there are employees of Manatee County who are employed under the CETA program; that we had [sic] some testimony on the record for Commission determination of their status.
MR. FAYE: Would the hearing officer like then to have somebody who is in charge of the CETA employees be here to tell us what the CETA employees do?
HEARING OFFICER: I would appreciate that very much. In light of the fact that we will be getting someone from the City [sic], I won't ask any further questions on this.
In response to the hearing officer's request, the County produced Regis Chapman, Director of the Manatee County Department of Human Resources, which has responsibility for the CETA program. Mr. Chapman briefly explained the CETA program, and the number and status of CETA employees employed by the County. At the conclusion of his brief testimony on direct, consisting of some five pages, the County's attorney inquired of the hearing officer as follows:
MR. FAYE: Mr. Hearing Officer, actually I am presenting this testimony of this witness to the benefit of the Commission because there was some request that we have some information about CETA.
So, I really don't know how extensive you want my examination to be on what a CETA employee is.
Would you like for me to inquire further, in more detail?
HEARING OFFICER: No. I think we certainly established the important points.
Notwithstanding PERC's argument on this appeal that the County attorney called and examined witnesses on the CETA issue, our review of the evidence and the dialogue between the County attorney and the hearing officer, above quoted, demonstrates that neither the Union nor the County viewed the CETA issue as a matter in controversy.
PERC's position concerning the effect of stipulations has been expressed in prior cases by PERC itself. In Hillsborough County Aviation Authority, 2 FPER 54 (1976), the hearing officer accepted the stipulation of the parties concerning the composition of the appropriate collective bargaining unit, as a result of which no evidence was offered or taken, nor was any sought. In approving the order, while at the same *451 time expressing reservations about the procedures followed, the Commission stated:
... We have long held that this Commission will not reject agreements or stipulations entered by the parties unless the agreements or stipulations are repugnant to the language or policies of the act.
To the same effect was PERC's decision in State University System Board of Regents, 3 FPER 39 (1977), in which the Commission stated:
Although the composite stipulation entered into by the parties is not binding on this Commission, it has long been held that a stipulation will not be rejected unless it is contrary to the language or intent of Chapter 447, Part II, Florida Statutes (1975) (hereinafter the Act). The Commission concludes that the Composite Stipulation of August 20, 1975 is not repugnant to any of the provisions of the Act or Fla. Admin. Code Chapters 8H-129 (Commissions Rules and Regulations).
We have examined PERC's order in this case in the light of the foregoing decisions to determine whether the order expresses any finding that the agreement to exclude CETAs is "repugnant to the language or policies of the Act" (Hillsborough County Aviation Authority, supra), or "contrary to the language or intent of Chapter 447, Part II, Florida Statutes (1975)" (State University System Board of Regents, supra). There is no such finding, nor any other policy or practical reason given by the Commission for rejecting the stipulation. The County insists, and we are persuaded that it does so with good reason, that PERC "routinely" accepts bargaining units involving a stipulated exclusion of CETA employees, as in Federation of Public Employees and Collier County, RC-77-071. CETA employees have, however, also been included in bargaining units, as in Federation of Public Employees v. City of Tamarac, 4 FPER # 4070 (1978); and PERC cites authority from another jurisdiction for the proposition that the agency need not accept stipulations contrary to the Public Employees Relations Act or its policy, County Commissioners of Mifflin County v. Pennsylvania Labor Relations Board, 102 LRRM 2735 (July 5, 1979). We note from a reading of this latter case, however, that the stipulation for exclusion of CETA employees there had been withdrawn prior to being acted upon by the agency. We have also noted Evergreen Legal Services and Washington Legal Workers, 103 LRRM 1028 (1979), in which CETA employees were included in a bargaining unit. This case is of doubtful application in the present controversy, however, in view of what we perceive as vast dissimilarities between employees of a typical Florida county, and employees of Evergreen, a publicly-funded legal services program furnishing legal services to low income persons in the State of Washington, in which all employees, CETA and non-CETA, are "dependent on the exigencies of revenues from federal, state, and municipal sources which are generally reviewed annually." (Id. at 1030) And see particularly Hillsborough County Board of County Commissioners, 5 FPER # 10019 (1979), in which the Commission, applying amendments to the CETA program effective October 11, 1978, found that the conditions that warranted inclusion of CETAs in the City of Tamarac case, supra, no longer applied, and that such amendments would, in fact, require exclusion of CETA employees. Under the Hillsborough County decision, it is clear that PERC's present position is that CETA employees lack community of interest with regular employees and such employees do not possess a reasonable expectation of continued employment so as to justify their inclusion in a unit of regular employees. It therefore appears that the inclusion or exclusion of CETA employees is an issue on which the County is entitled to be fully heard.
The standards for review of agency action in PERA cases as set forth in Pasco County School Board v. Florida Public Employees Relations Commission, 353 So.2d 108 (Fla. 1st DCA 1977), preclude substitution of our judgment for that of the agency. Our concern with the evidence, therefore, is solely for the purpose of determining the merits of the County's contention that *452 PERC improperly denied its request to present further evidence on the CETA issue. We note at the outset that PERC's findings regarding the County's CETA employees do not mesh completely with those made by the hearing officer. The hearing officer found that all CETA personnel are on OPS (Other Personnel Services) status. His order recites: "Chapman testified that in all other respects CETA employees are treated identically with other OPS employees." PERC's order found: "Such employees are treated as regular employees."[1] The hearing officer found that no social security contributions are withheld from compensation paid to CETA employees, and they do not qualify for unemployment compensation by virtue of work in a CETA program. PERC's order is silent on these matters. The hearing officer pointed out that CETA employees have a grievance procedure "that runs through the Department of Human Resources to the Department of Labor in Atlanta, different from regular employees." PERC's order fails to mention this distinction.
The County's exceptions to PERC's analysis and proposed order pointed out the need for evidence on other matters in order for PERC to carry out its responsibilities under Section 447.307(4)(a) through (h), Florida Statutes, which sets forth specific criteria to be considered in determining the appropriateness of a bargaining unit. The County's exceptions pointed out the difference in the grievance procedure applicable to CETA employees; the temporary nature of CETA employment, and the inapplicability of important collective bargaining provisions such as seniority and promotions, layoff, and recall; the use of CETA employees on non-profit corporation or service organization projects, completely removed from regular County jobs; the regular transfer or interchange of CETA employees with constitutional County officers such as the Sheriff, Tax Collector, Property Appraiser, and Supervisor of Elections, as well as with various state departments and agencies, whereas no such exchange occurs with regular County employees; and other matters.
Our conclusion from the foregoing discussion is simply that while we would not venture so far as to declare the evidence insufficient to justify inclusion of CETA employees in the bargaining unit in the absence of any stipulation for their exclusion,[2] we are of the opinion that the evidence is insufficient to justify PERC's overriding of the stipulation between the parties, particularly in the absence of any explanation for doing so that is rooted in the language, intent or policies expressed in Chapter 447, Part II, Florida Statutes.[3]
PERC's insistence that it adheres to a strict rule requiring evidence in the structuring of bargaining units is refuted by its own actions in this proceeding. Neither its analysis and proposed order of May 27, 1977, nor its order 77E-480 issued November 29, 1977, which included Title II and *453 Title VI CETA employees in the bargaining unit, made any reference to the distinction between CETA employees in "public service employment positions," and those who are "special project employees." This distinction was first injected into the record during the reopened hearing on January 27, 1978 by counsel for the Union, who proposed that the County prepare a list of special project CETA employees, and that the Union would join the County in a stipulation to be submitted to PERC for the purposes of identifying and excluding those employees from the bargaining unit. The hearing officer then stated:
HEARING OFFICER:
I will say at this time the Commission's consistent position, as revealed in a number of recent orders, specifically the City of Tamarac and the City of Tampa, is that CETA employees who occupy public service employment positions or grant CETAs would be included in bargaining units and those who are employed as special project employees with a limited duration of employment would be excluded.
Despite the County attorney's contention that all CETAs should be "treated the same," he nevertheless agreed to submit a list of special project CETA employees for the benefit of the Commission. Consistent with the Union's proposed stipulation, and the County's cooperation in submitting a list of those employees, PERC's order 78E-188, issued May 30, 1978, excluded "CETA project employees" from the bargaining unit. Thus, after having denied the County the opportunity to present evidence on the CETA issue, the Union was nevertheless permitted to reopen the issue by its proposed stipulation, which the hearing officer and PERC accepted, without evidence.
We disapprove any rule of procedure which would permit an agency to pick and chose which stipulations of the parties it desires to honor in an after-the-fact fashion. Section 120.57(3), Florida Statutes, previously referred to, recognizes the practicability of stipulations. Consistent with the statutory provision and the rulings on the various matters presented in this proceeding, although we do not adopt any "hard-and-fast" rule on the issue, we suggest that in order to avoid the creation of conflicts such as we have been compelled to resolve in this case, it would appear advisable for the agency to declare in advance of the hearing its position with respect to nonacceptance of stipulations on any subject,[4] or, in the absence of such advance notice, no stipulation not otherwise precluded by law should be rejected without giving adequate reasons for it, and any party prejudiced by such rejection should be given a reasonable opportunity to present the evidence or arguments it would have presented in the absence of such stipulation. Compare Gandy v. Department of Offender Rehabilitation, supra. See also Florida Power Corp. v. Lewis, 381 So.2d 1193 (Fla. 2nd DCA 1980).
In accordance with the reviewing authority provided by Section 120.68(8) and (12), Florida Statutes, we hold the proceedings below were fatally defective for the reasons above set forth, and the certification proceeding must be set aside.
In view of our determination on the procedural point, we find it would serve no useful purpose to extensively discuss the remaining issues. We find no error in the Commission's rejection of the County's request for a reopened hearing for the purpose of presenting evidence on a proposed "blue collar-white collar" bargaining unit, nor in the Commission's failure to designate certain employees as managerial or confidential under Section 447.203(4) and (5), Florida Statutes, as urged by the County. Further, while we do not condone the activities engaged in by the Union representatives, as alleged in the County's objections based on unfair labor practices (Sections *454 447.301(1), (2) and 447.509(1)(a) and (b), Florida Statutes) nor do we necessarily agree with the reasoning and legal basis for PERC's decision on these issues, we are of the opinion that the most the County would be entitled to on the record before us would be to compel an evidentiary hearing on these objections; and since we have ordered that the election and certification proceeding itself should be set aside on other grounds, such a hearing would obviously be a useless exercise.
REVERSED and REMANDED.
McCORD and SHIVERS, JJ., concur.
NOTES
[1] Mr. Chapman testified, in part: "They [CETAs] are treated as equal to all other employees, except for the fact that they are under what we call Other Personnel Services, OPS category. Otherwise, their pay grades, and their classifications are identical to regular employees."
[2] Without implying any criticism of the hearing officer or the manner in which he discharged his duties, we suggest that a legitimate question may exist whether the mandate of PERC's Rule 8H-3.18(c), Fla. Admin. Code, requiring the hearing officer to "... inquire fully into all matters at issue and obtain a full and complete record ..." was observed, if the stipulation of the parties is disregarded. The record accepted by PERC as the basis for its decision appears also to fall short of what would appear to be necessary according to PERC's own assessment of its responsibilities, as stated in Hillsborough County Board of County Commissioners, 5 FPER # 10019 (1979) at page 19:

... Furthermore, in light of the unique nature of each public employer's organization and operation and the special conditions of employment resulting from each such unique employment situation, the Commission is statutorily mandated by Section 447.307 to define units on a case by case basis, taking into consideration the special facets of a particular situation.
[3] See the Legislature's declaration of public policy, Section 447.201, Florida Statutes, and powers and duties conferred upon the Commission, Section 447.207, Florida Statutes.
[4] Although the nonacceptance of stipulations is not suggested or encouraged, the position of the agency might well be a matter requiring adoption of a rule, Section 120.54, Florida Statutes, or at the very least, included in the notice of hearing, Section 120.57(1)(b)2, d, Florida Statutes. We make no ruling on these issues since they are not presented for consideration by either party.