794 So.2d 686 (2001)
Elizabeth A. DOYLE, Appellant,
v.
DEPARTMENT OF BUSINESS REGULATION and Public Employees Relations Commission, Appellees.
Nos. 1D00-4235, 1D00-4521.
District Court of Appeal of Florida, First District.
September 6, 2001.
*687 William J. Sheppard and D. Gray Thomas of Sheppard and White, P.A., Jacksonville, for Appellant.
*688 David K. Minacci, Assistant General Counsel, Department of Business and Professional Regulation, Tallahassee and William D. Salmon, Staff Counsel, Florida Public Employees Relations Commission, Tallahassee, for Appellees.
KAHN, J.
These cases are consolidated appeals of two orders entered by the Public Employees Relations Commission (PERC), one of which addressed back pay and benefits, and the other of which addressed attorney's fees and costs, due Sergeant Elizabeth Doyle (Doyle). Because PERC's interpretation of its responsibility where parties reach a stipulated settlement was erroneous, we reverse the orders and direct PERC to accept the stipulations of the parties.

I. FACTS
Doyle was dismissed from employment as a special agent with the Division of Alcoholic Beverages and Tobacco, a division of the Department of Business and Professional Regulation (agency). Doyle successfully appealed the termination. See Doyle v. Dep't of Bus. & Prof. Reg., 713 So.2d 1040 (Fla. 1st DCA 1998). Following further proceedings on remand, PERC imposed a one-week suspension, and this court affirmed, over the agency's appeal, remanding to PERC for an award of back pay and benefits and attorney's fees and costs. See Dep't of Bus. & Prof. Reg. v. Doyle, 750 So.2d 746 (Fla. 1st DCA 2000).
On remand, Doyle and the agency resolved almost all back pay and benefits issues, but they disagreed on a claim for additional compensation for loss of seniority and advancement in rank, and also on Doyle's entitlement to a measure of additional compensation to offset a disproportionately high income tax liability she faced as a result of her receipt of four years' worth of compensation during one tax year. With respect to attorney's fees and costs, Doyle asserted an entitlement to attorney's fees in the amount of $182,475 (the lodestar of $60,825 with a multiplier of three), and $2,833.77 in costs. Subsequently, the parties agreed to a total attorney's fees and costs settlement figure of $75,000, although Doyle continued to assert entitlement to a multiplier, albeit at a reduced level. Finally, the parties reached complete agreement when Doyle withdrew her claims relating to loss of seniority and advancement in rank as well as entitlement to a multiplier, and the agency agreed to additional compensation based on the federal income tax issue. The parties' final stipulation included attorney's fees and costs for the sum of $75,000, and back pay including additional compensation for the disproportionate tax liability.
Following a pre-hearing conference, the PERC hearing officer entered an order directing that an evidentiary hearing on the issues proceed in full, despite the filing of the various stipulations and settlement agreements. Doyle then filed a motion to compel enforcement of the settlements and stipulations. Although the agency did not oppose enforcement, the hearing officer denied the motion.
The hearing officer entertained evidence and arguments on the issues of back pay and benefits and attorney's fees and costs during a June 13, 2000, hearing. The hearing officer entered a recommended order, to which the parties filed timely exceptions. PERC thereafter entered separate orders on back pay and benefits, and attorney's fees and costs.
In the final orders, PERC entirely rejected the stipulations of the parties with respect to attorney's fees and costs, applying its own evaluation of matters presented at the hearing, and also completely rejected the agreed settlement for compensation *689 for the disproportionate tax liability. PERC, noting that Doyle was reinstated to employment on June 12, 2000, ordered the agency to pay her $99,426.80, plus interest at the lawful rate and less appropriate deductions; retirement payments totalling 40,970.28; 642 hours of annual leave credit; and 708.5 hours of sick leave credits. For attorney's fees and costs, PERC ultimately ordered payment of $12,471.08.

II. THE AGENCY'S PARTICIPATION IN THIS APPEAL
As set out above, Doyle and the agency spent much time and effort reaching a settlement acceptable to both parties. Each party yielded to the other in material disputed aspects. The agency wholeheartedly stood behind the stipulation, even after it was evident that the hearing officer questioned its validity and ordered an evidentiary hearing despite the stipulations. At the evidentiary hearing, instead of arguing against the stipulation, the agency attorney took the professional high road, stating:
The agency of course would like to pay as little as possible in this case. However, that also includes non monetary resources such as time, adverse effects on agency reputation and good will. We are ready to put this behind us. We came together, both parties, at the request of the commission to resolve as much of these issues as possible informally. We have done so. The agency has agreed in the stipulation as to what it believes it can agree to and it agrees to be bound.
Notwithstanding this position, the agency has filed a brief in this appeal urging that PERC be affirmed. We find that the agency is estopped from abandoning the settlement. See Dep't of Rev. v. Hobbs, 368 So.2d 367, 369 n. 4 (Fla. 1st DCA 1979) ("To justify a claim of estoppel against the state there must be (1) a representation by the party estopped to the party claiming estoppel as to some material fact, (2) a reliance upon the representation by the party claiming the estoppel and (3) a change in such party's position, caused by his reliance upon the representation to his detriment."). Here, the agency agreed to be bound to a certain amount of attorney's fees and back pay. Then, Doyle relied on that representation by, ultimately, relinquishing any entitlement she may have had to an attorney's fee multiplier and advancement in rank. Doyle, with the Agency's assent, continued to vigorously assert the validity of the settlement. We conclude that, on these facts, the agency is estopped from contesting the stipulation. Accordingly, we do not consider its arguments in this appeal. We do, however, commend the professionalism of the agency's legal counsel in reaching, and standing by, the settlement at the administrative level.

III. PERC'S ERRONEOUS REJECTION OF THE STIPULATION AS TO ATTORNEY'S FEES
PERC asserts that section 447.208(3)(e), Florida Statutes, gives it the authority to reject virtually any settlement agreement for attorney's fees in a state Career Service System case. Section 447.208(3)(e), Florida Statutes states:
Any order of the commission issued pursuant to this subsection may include back pay, if applicable, and an amount, to be determined by the commission and paid by the agency, for reasonable attorney's fees, witness fees, and other out-of-pocket expenses incurred during the prosecution of an appeal against an agency in which the commission sustains the employee. In determining the amount of an attorney's fee, the commission *690 shall consider only the number of hours reasonably spent on the appeal, comparing the number of hours spent on similar Career Service System appeals and the reasonable hourly rate charged in the geographic area for similar appeals, but not including litigation over the amount of the attorney's fee. This paragraph applies to future and pending cases.
PERC also argues that its interpretation of the statute, one that allows it carte blanche to reject a fee settlement in favor of a contested hearing, is entitled to great deference, citing Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238 (Fla. 1st DCA 1981). Doyle argues the standard of review is de novo. We agree with Doyle.
An administrative agency's interpretation of a statute that it applies is usually accorded substantial deference unless the interpretation is clearly erroneous. See Pan Am. World Airways, Inc. v. Fla. Pub. Serv. Comm'n, 427 So.2d 716 (Fla. 1983). Under that doctrine, if the agency's interpretation is one of several permissible interpretations, it must be upheld despite the existence of reasonable alternatives. See Framat Realty, Inc., 407 So.2d at 242.
This court recognizes exceptions to the general rule. First, a court need not defer to an agency's construction or application of a statute if special agency expertise is not required. See Bd. of Trs. of Northwest Fla. Cmty. Hosp. v. Dep't of Mgmt. Servs., Div. of Ret., 651 So.2d 170, 173 (Fla. 1st DCA 1995) ("We find that the determination of whether a person performs services as an employee or an independent contractor is not within that class of decisions requiring such agency expertise as to compel the court to defer to the Division's construction."); Schoettle v. Dep't of Admin., 513 So.2d 1299, 1301 (Fla. 1st DCA 1987) ("[T]his is not a case of demonstrated agency expertise in an area which requires this court to accord the agency's construction of the statute great weight."). Similarly, a court need not defer to an agency's construction if the language of the statute is clear and therefore not subject to construction. See City of Safety Harbor v. Communications Workers of Am., 715 So.2d 265, 267 (Fla. 1st DCA 1998) ("Where the language of a statute is clear and unambiguous, the statute must be given its plain and ordinary meaning, and no further review of legislative history is necessary."); see also Bd. of Optometry v. Fla. Soc. of Ophthalmology, 538 So.2d 878, 886 (Fla. 1st DCA 1988) ("[T]he statute should be construed in accordance with the `basic rule of statutory construction that words of common usage, when used in an enactment, should be used in their plain and ordinary sense.' To perform this function does not require any particular agency expertise, a fact that substantially mitigates the application of the rule calling for great deference to the agency's interpretation of the statute.") (quoting Freedman v. State Bd. of Accountancy, 370 So.2d 1168, 1169 (Fla. 4th DCA 1979)).
PERC's field of expertise is public sector labor regulation. See Pub. Empls. Rels. Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987 (Fla.1985) ("[T]he ultimate authority to administratively interpret chapter 447 and article I, section 6, of the Florida Constitution, which deal with state regulation of labor organizations, resides with the Commission and not a hearing officer.") Interpretation of the fee statute at issue in this case does not require expertise in the field of labor organizations. Similarly, the statute at issue does not require construction because the statute is unambiguous when the words are given their plain and ordinary meaning. See Donato v. Am. Tel. & Tel. *691 Co., 767 So.2d 1146, 1150 (Fla.2000) ("`[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.'" (quoting Holly v. Auld, 450 So.2d 217, 219 (Fla.1984))). Thus, PERC's construction is not due any deference from this court.
Section 447.208(3)(e), Florida Statutes, applies when PERC is called upon to "determine" an amount of reasonable attorney's fees. According to the dictionary, "determine" means,
1 a: to fix conclusively or authoritatively. b: to decide by judicial sentence. c: to settle or decide by choice of alternatives or possibilities d: RESOLVE. 2 a: to fix the form, position, or character of beforehand: ORDAIN .... b: to bring about as a result: REGULATE.... 3 a: to fix the boundaries of. b: to limit in extent or scope. c: to put or set an end to: TERMINATE .... 4: to find out or come to a decision about by investigation, reasoning, or calculation.... 5: to bring about the determination of....
Webster's Ninth New Collegiate Dictionary 346 (1989). We deem it clear that PERC would be called upon to determine fees only where a dispute exists between a career service employee and her state employer. In this case, the agency, after extensive good faith negotiation, had already determined that $75,000 was a fair and reasonable amount of attorney's fees. By settling for that amount of fees, the agency sought to avoid the financial liability of protracted litigation over issues such as advancement in rank and the applicability of a multiplier, not to mention the liability of a costly appeal such as that now proceeding. Any judicial or quasi-judicial tribunal has an obligation to carefully scrutinize a contested attorney's fee award. Nevertheless, PERC's argument that it alone serves as the benevolent watchdog of the public coffers administered by another state agency, leaves us unpersuaded.
PERC also contends that case law gives it the obligation to carefully scrutinize any stipulation for attorney's fees, relying upon Division of Administration v. Denmark, 354 So.2d 100, 101 (Fla. 4th DCA 1978). Denmark does indeed state that awards of attorney's fees "should always be sharply scrutinized when we consider that the frustrated taxpayer is, by statute, called upon to make this payment, not the particular client receiving the benefit." Id. PERC overlooks, however, that neither Denmark, nor any other case law cited by PERC for this proposition, is analogous to the present case. In Denmark, as is often the case, the amount of reasonable attorney's fees was hotly contested. In the present case, the parties stipulated to the amount of attorney's fees. PERC's "scrutiny" merely prolonged this litigation.
PERC also relies upon Manatee County v. Florida Public Employees Relations Commission, 387 So.2d 446 (Fla. 1st DCA 1980), asserting that it stands for the proposition that PERC can reject any stipulation between parties appearing before the commission as long as each party is afforded due process. Due process comes in the form of an evidentiary hearing on any matters that the party intended not to litigate due to reliance on the rejected stipulation. Even if this is a correct characterization of the holding of Manatee County, PERC has not met the threshold requirement for rejecting a stipulation. As the Manatee County court pointed out, PERC's own position is that it will not reject a stipulation unless it is contrary to the language or intent of chapter 447. See id. at 451. Once this requirement is met, *692 and PERC decides to reject the stipulation, then the parties must be afforded due process. Because PERC interpreted section 447.208(3)(e), Florida Statutes, as giving it the responsibility to protect state coffers, not only from claimant's lawyers, but also from the considered decisions of sister agencies, it mistakenly concluded that it had the power to simply reject the present stipulation as contrary to section 447.208(3)(e). Here PERC had no basis to reject the stipulation and, accordingly, no due process concerns should have even arisen.

IV. PERC'S ERRONEOUS REJECTION OF THE STIPULATION AS TO ADDITIONAL COMPENSATION FOR DISPROPORTIONATE TAX LIABILITY
PERC also erred by rejecting the stipulation concerning additional back pay to compensate for increased income tax liability. As appellant points out, the amount of increased income tax liability was supported by the opinion of a tax attorney. During negotiations, appellant asserted that she was entitled to the additional back pay pursuant to Gelof v. Papineau, 648 F.Supp. 912 (D.Del.1986). PERC now argues that Gelof was an age discrimination case that should not apply to the issue of entitlement to back pay in a state employment case. PERC, however, misses the point. The question is not whether Gelof accurately states what the law would be were the issue to be fully litigated in Florida. The agency had the right to compromise the issue rather than litigate the question and perhaps establish precedent that it would not want to live with in future cases. Cf. Abramson v. Fla. Psychological Ass'n, 634 So.2d 610, 612 (Fla.1994) (holding that the Department of Professional Regulation and Board of Psychological Examiners could enter into a settlement with potential licensees relaxing licensure requirements, thus avoiding litigation and protecting the constitutionality of chapter 490). A legitimate purpose of the stipulation below may well have been to avoid a definitive, and perhaps unhelpful, from the state's perspective, judicial answer on the question of whether an inappropriately dismissed public employee in Florida is entitled to additional back pay to compensate for increased income tax liability attributable to receipt of several years' wages during one tax year. We are a bit surprised that PERC has not recognized this point, even as recently as oral argument in this case.
PERC's reason for rejecting this aspect of the stipulation is that the opinion of the tax attorney, offered in support thereof, was in the form of an affidavit, and thus was hearsay. PERC does not argue that this type of award is contrary to the language or intent of chapter 447. The stipulation was simply set aside as not supported by sufficient evidence. This sort of faulty logic overlooks the very purpose of a stipulationto reduce or avoid the need for evidence. See Arrington v. State, 233 So.2d 634, 636 (Fla.1970) ("A stipulation is a voluntary agreement between opposing counsel concerning the disposition of some relevant point so as to obviate the need for proof or to narrow the range of litigable issues. The beneficial aspects of stipulations in terms of conserving time, money and effort are universally recognized."). As with the stipulation regarding attorney's fees, PERC has advanced no legally sufficient reason to reject the back pay stipulation, and we need not analyze whether the parties were afforded sufficient due process after the erroneous rejection.

V. CONCLUSION
Florida courts look favorably upon stipulations because they shorten litigation *693 time and lower litigation costs. See Cunningham v. Standard Guar. Ins. Co., 630 So.2d 179, 182 (Fla.1994). "Such stipulations should be enforced if entered into with good faith and not obtained by fraud, misrepresentation, or mistake, and not against public policy." Id. Here PERC does not dispute that the stipulation was entered into with good faith after a series of concessions by both sides. PERC erred by rejecting the stipulation and requiring the presentation of evidence. The stipulations here sought to avoid needless presentation of evidence and thereby prevent expenditure of both private and public monies on court or agency proceedings that had already been resolved by good-faith negotiations.
For the foregoing reasons, we REVERSE PERC's order rejecting the stipulation, and REMAND with instructions that the stipulation be reinstated and approved by PERC.
BOOTH and PADOVANO, JJ., concur.